**SO ORDERED.**

**SIGNED this 5 day of June, 2013.**

*Stephani W. Humrickhouse*
_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

---

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:                                                          CASE NO.

**CHRYSTAL ANN CAMPBELL,**                      **12-06400-8-SWH**

      **DEBTOR**


### ORDER REGARDING DEBTOR'S MOTION FOR SANCTIONS

Pending before the court is debtor Chrystal Ann Campbell's motion for sanctions against the City of Raleigh ("the City"), a creditor in her chapter 13 case, on grounds that the City filed a claim classifying her debt as secured despite having no basis upon which to do so.  The City failed to appear at a show-cause hearing scheduled for February 20, 2013, and the debtor agreed to reschedule the hearing in order to facilitate a thorough discussion of what debtor's counsel perceives as a problematic and recurring practice on the part of the City in connection with the City's filing of "secured" claims.  The rescheduled hearing took place on April 24, 2013, in Raleigh, North Carolina.

For the reasons that follow, the motion will be denied to the extent the debtor seeks monetary sanctions against the City under Rule 9011, but will, pursuant to the court's general authority under

§ 105, be allowed to the extent that the debtor seeks compensation for attorneys' fees incurred in bringing this matter to the attention of the court.

## BACKGROUND

The City of Raleigh filed a claim in the debtor's chapter 13 case (Claim #9) on November 28, 2012, asserting a debt for services for water and sewer utilities in the amount of $181.21 and classifying the claim as secured. Two days later, debtor's counsel ("Counsel") sent an email to Ms. Donna Yost of the City Attorney's Office at the email address provided on the proof of claim, pointing out that the debtor was a renter and that the claim was unsecured. Counsel advised the City that if the claim was not amended by January 2, 2013, he would seek Rule 9011 sanctions, and articulated the problem as follows:

> My office has had to file many objections to frivolous City of Raleigh claims for small amounts in the past year. The objections are always allowed or the claims amended [and] as such never see the light of day of a courtroom. I am copying this email to the Chapter 13 Trustee and the Bankruptcy Administrator so that in their roles as watchdogs of the bankruptcy system they will be aware of these frivolous claims and consider remedies that are more general in scope than what I am able to do representing individual debtors in cases.

Email from Travis Sasser to Donna Yost (November 30, 2012). In addition to Ms. Yost, Counsel sent the email to Mr. Thomas McCormick, the City Attorney,[1] as well as to the chapter 13 trustee and the bankruptcy administrator.

The City did not amend its claim, and on January 4, 2013, Counsel filed an objection to the claim on grounds that the debtor did not own, on the petition date or at any prior time, the real property that was serviced by the City, such that the City could not plausibly assert that the debt was

---

[1] The City stated that Mr. McCormick did not recall receiving this email and has been unable to locate it in his email account.

2

secured under § 6.33 of the Raleigh City Charter. Counsel asserted that the claim should be reclassified as a general unsecured claim. In addition, Counsel simultaneously filed a motion for sanctions under Rule 9011 on grounds that the instant case was simply the most recent example of the City's practice of repeatedly filing claims classified as "secured" when, in fact, they were unsecured, and correcting them only if a debtor's attorney filed an objection to the claim. At that point, the City typically would refile the claim without responding to the objection. In the Rule 9011 motion, Counsel alleged that a similar set of facts recently occurred in one of his other cases (In re Fister, No. 12-04280-8-SWH (Bankr. E.D.N.C. 2012) (City filed a claim for a secured debt despite fact that debtor did not own real property serviced by the City), and that the problem is one of long standing.

The City filed an amended claim on January 25, 2013, reclassifying the debt as unsecured. The City also filed a response to the Rule 9011 motion on January 28, 2013, in which it agreed that the claim in Ms. Campbell's case should have been classified as unsecured, and attributed the erroneous classification to a "clerical error." The City also argued that in order to proceed under Rule 9011, the debtor was required by the rule to give the City 21 days' notice of the need to withdraw its claim or correct the error after service of *the unfiled motion* before filing that motion with the court. In other words, while the City actually received more than the required 21 days' notice of the need to correct its claim, it received that notice via informal email, not by motion, as required by the rule.

The matter was set for hearing on February 20, 2013. The debtor's counsel and the chapter 13 trustee appeared, but the City did not.[2] Because the City had corrected its proof of claim,

---

[2] Counsel for the City stated that the City did not receive notice of the hearing.

the court resolved the objection to claim and entered an order to that effect on March 1, 2013. However, during the February 20 hearing, Counsel maintained that the City's erroneous designation of the debt as "secured" was not, as the City contended, a rare clerical error.  Instead, Counsel argued, the erroneous classification was representative of a common practice by the City.  Counsel identified additional cases within the last several years in which the City filed claims wrongly classified as secured but then, if the debtor objected, amended the claims to accurately reflect the debts' unsecured status.  In Counsel's view, this happens too frequently to be attributable to clerical error, and is indicative of the City's practice of improperly shifting to debtors' counsel the obligation to determine a claim's secured status, to initiate corrective measures, and to ensure that the claims are corrected.

The court set a show cause hearing for April 24, 2013, and directed the City to appear and explain the basis upon which it filed secured claims in cases where the debtor did not own real property serviced by the City.  The court also indicated that it would consider a fee affidavit from Counsel relating to the time spent bringing the matter before the court, if the court ultimately determined that sanctions were appropriate.  At the rescheduled hearing on April 24, 2013, all parties appeared.

## DISCUSSION

The court turns first to the question of whether Counsel has complied with the specific directives of Rule 9011 when he used an informal email to give the City notice of the need to correct the claim and his intent to file a Rule 9011 motion if the City failed to do so.  The City argued that Rule 9011 requires service of the proposed Rule 9011 motion itself, and that because the motion was not provided to the City before being filed with the court, the debtor was precluded from seeking

sanctions under Rule 9011. Counsel conceded that to the extent Rule 9011 is strictly construed to require service of the proposed motion, as compared to an alternative form of communication providing the same substantive information, the debtor could not proceed under Rule 9011.

On this point, the court agrees with the City. As the Court of Appeals for the Fourth Circuit has explained, "the safe-harbor provisions of Fed. R. Civ. P. 11 are inflexible claim-processing rules," such that a court "exceeds its authority by imposing sanctions requested through a procedurally-deficient Rule 11 motion." Brickwood Contractors, Inc. v. Datanet Engineering, Inc., 369 F.3d 385, 396 (4th Cir. 2004). This adherence to formality serves a significant role, but so too did the initial email Counsel sent to the City, which embodied the sort of professional courtesy members of the bar are expected to extend to one another. The protocol envisioned by the Advisory Committee, as it explained in one of its revisions to the rule, includes both forms of communication:

> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.

Fed. R. Civ. P. 11(c)(2) (Advisory Committee's notes to the 1993 Amendments), quoted in Star Mark Mngmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175, 176 (2nd Cir. 2012) (holding that plaintiff complied with Rule 11 when it attached to its warning letter a copy of its motion for sanctions, even though plaintiff did not at that time include supporting affidavits or a memorandum of law). Thus, while Counsel's email was exactly the right first step, it does not satisfy the official notice requirements of Rule 9011, and the court will not consider imposition of sanctions under Rule 9011.

The true impetus behind Counsel's motion, however, was not sanctions *per se*, but rather Counsel's increasing frustration with what he characterizes as the City's habitual shift, to debtors' attorneys, of the responsibility to ensure accurate classification of claims filed by the City.  In multiple examples cited by Counsel, the City simply failed to respond to debtors' objections to the City's misclassifications, leaving it to the debtors' attorneys and court to resolve the matter.  In sum, Counsel believes that either the City 1) fails to provide adequate training to staff personnel responsible for the preparation of claims, or, more troubling, 2) the City wrongfully classifies claims as secured every time a debtor incurs a debt for services received at a Raleigh address without regard to whether the debtor *owned* the real property at the time of service, expecting that the mis-classification  will go unremarked, thus resulting in increased priority (and payment) for the City.

In support of his argument that the City's shortcomings in this regard go far beyond an occasional "clerical error" and are systemic, Counsel ran various searches through this district's claims databases in order to account for and review all of the claims filed by the City within the last several years.  The City had stated in its response to the motion for sanctions that Counsel could point  "only to two errors made in the course of addressing two to three hundred proofs of claim filed in 2012."  Response of the City of Raleigh at p. 4 ¶ 11.  In other words, the City argued, it does the best it can and an isolated error or two are understandable, given the quantity of claims the City files.  Counsel represented to the court that as best he could determine, however, the City filed only approximately 32 or 33 claims in 2012, of which approximately 16 were classified as secured.  The Chapter 13 trustee conducted a similar search, and informed the court during the April 24 hearing

that by his office's estimation, the City filed approximately 36 claims in 2012 and 10 claims in 2013, of which a combined total of 21 were filed as secured claims.[3]

Counsel argues that a review of these claims over the past several years bears out his assertion that a significant percentage were improperly classified, including the following: In re Clifford, Case No. 11-05930-8-JRL (Bankr. E.D.N.C. Nov. 29, 2012) (order allowing Counsel's objection to City's improper classification of claim as secured; City did not respond to objection); In re Patterson, Case No. 11-05133-8-JRL (Bankr. E.D.N.C. Feb. 14, 2012) (same); In re Moore, Case No. 10-07985-8-SWH (Bankr. E.D.N.C. Oct. 4, 2011) (same); In re Hipolito, Case No. 11-06311-8-SWH (Bankr. E.D.N.C. Jan. 6, 2012) (same); In re Saunders, Case No. 11-06936-8-JRL (Bankr. E.D.N.C. March 7, 2012) (order directing City to amend claim to include water/sewer charges and parking citation in unsecured portion); In re Alexander, Case No. 11-07028 (Bankr. E.D.N.C. March 7, 2012) (same; entered in conjunction with Saunders order).

The Court is persuaded that the City's erroneous classification of claims is not the result of isolated or clerical error. It became abundantly clear, during the April 24 hearing, that there is a problem with the City's protocol for claim classification. The City ultimately (albeit grudgingly) acknowledged that it has made mistakes, but it still maintains that it simply is doing its duty as a municipal entity to ensure that the City of Raleigh collects all funds to which it is entitled. The court applauds this goal, but expects the City – *like any other creditor* – to achieve that goal without wrongfully asserting rights to priority, and correspondingly increased payouts, to which it is not entitled. When the City does so, that cost is unfairly incurred by the citizens the City purports to

---

[3] While the numbers cited by Counsel and the trustee are only estimates, the court is struck by the discrepancy between these findings and the City's estimate. The City provided no information about the basis upon which it asserted that it filed hundreds of claims.

serve, and the practice impedes the fair and efficient functioning of this court.  In this case, for example, the City's assertion of secured status gave rise to feasibility concerns, prompting the trustee to file a motion to dismiss the debtor's case.  The feasibility issue is now resolved, but not without entirely unnecessary work, cost, angst and general heartburn for the debtor and her Counsel.

The court is troubled by the City's refusal to fully acknowledge the multi-layered fallout that ensued from its carelessness.  If the City had been inclined to police itself, as it now claims to be, and truly eager to revise its procedures to ensure that mistakes are rare or nonexistent, then it would have taken the opportunity to do so long ago in connection with, for example, *this* case, when Counsel sent the email.  Or, perhaps, it could have instituted corrective measures after the exact same problem came to light in other cases, like those cited above: In re Clifford, In re Patterson, In re Moore, In re Hipolito,  In re Saunders, or In re Alexander.  It did not.

Notwithstanding the City's reluctance to retrospectively acknowledge the scope of its errors, the court *is* heartened by the City's current effort to attentively focus to its internal claims-handling procedures.  The City informed the court that it has revised its protocols to avoid such mistakes in the future.  Further, in a recent discovery-based hearing in this case, the City volunteered to the court that it is reviewing secured claims it filed over the past year, and amending those claims as necessary.

The court finds that the City's invigorated interest in ensuring the accuracy of its claims and in complying fully with the expectations inherent in the claims process is the direct result of Counsel's diligent effort to bring this matter to light.  Despite the City's complaint of being  "hauled into court" over a relatively small and easily fixable problem, it is patently clear that had the City *not* been compelled to come to court and fully own up to its errors, this "easily fixable" problem

would remain unfixed, continue unabated, and lurk perpetually under the radar. When it filed claims erroneously classified as secured, the City enjoyed a higher priority for those claims in instances where the debtor did not object, and even if the debtor *did* object, the City typically sat upon its municipal hands and simply did not respond, thus leaving to debtor's counsel and the court the task of ensuring orders were entered to resolve the objection and formalize reclassification of the claim. In short, and unfortunately, the City appears to have lacked internal motivation to change its ways. The court emphasizes that there was no testimony offered to establish that the City actively sought to abuse the bankruptcy system. However, the record solidly establishes that the City's erroneous classifications were derived in varying degrees from insufficient staff training, lack of attention, general laziness, and a troubling indifference to the consequences that these factors imposed on others.

Under 11 U.S.C. § 105, bankruptcy courts are empowered to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

The court is convinced that had Counsel not pursued this matter so diligently, the City would not have examined its procedures and revised them with an eye toward more scrupulous compliance with the Bankruptcy Code. Counsel's efforts to resolve the problem began, appropriately, with overtures to counsel for the City, but that measure, like similar measures undertaken by Counsel and other attorneys as well in other cases, did not capture the City's attention.  Bringing the matter on for hearing, and doing the necessary homework to illustrate the scope of the problem to the court

and to the City itself, did. Pursuant to the court's inherent powers to issue orders as necessary to ensure the efficient functioning of the court,[4] a compensatory award of fees to Counsel is warranted.

The court, other debtors' attorneys, the trustee and bankruptcy administrator, and of course debtors who proceed through the bankruptcy process in this district are entitled to expect a certain level of accuracy and attention to detail in all fundamental aspects of a bankruptcy case, including the filing of claims. See 11 § U.S.C. 502(a) (the filing of a proof of claim means that it is deemed allowed); see also Watson v. Stonewall Jackson Memorial Hosp. Co., 2010 WL 4496837 *4 (Bankr. N.D.W. Va. 2010) ("When a creditor files a false or fraudulent proof of claim, which is deemed allowed by § 502(a), and entitled to prima facie presumption of validity and amount by Rule 3001(f), the creditor is abusing the bankruptcy process;   see also 2 Moore's Federal Practice – Civil § 11.41[1] (2010) ("The inherent power of federal courts to impose sanctions for bad-faith conduct in the course of litigation is not displaced by the sanctioning provision of Section 1927 or Rule 11.").  It is well established that courts have an inherent power to "award attorney's fees to a party when the opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." In re Jones, 2007 WL 1703673 *4 (Bankr. E.D. Va. 2007) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975)).  In this case, the circumstances support an award of compensatory fees.

Counsel's submission of fees and costs incurred in connection with this matter are detailed in an affidavit filed with the court on April 26, 2013.  The combined fees for both Mr. Sasser and Mr. Walker, together with PACER fees which constitute an expense of $84.10, total $3,449.10.  The

---

[4] Rule 9011 supplements this inherent power.  If Counsel had been in full compliance with that rule, an award of fees under Rule 9011 would have been warranted.

10

court finds the time expended and fees charged to be reasonable.  **The City is therefore directed to pay the sum of $3,449.10 to Sasser Law Firm within ten days of the date of this order, at the following address: Sasser Law Firm, 2000 Regency Parkway, Suite 230, Cary, NC 27518.**

The City also is directed to continue its review (and correction, as warranted) of claims it classified as secured during 2013, 2012, and 2011, and to provide to the court at the conclusion of that effort a brief summary of the City's discoveries and any remedial action taken.  Appropriate remedies would include, obviously, the City's refunding of any monies paid to the City as a result of erroneous classification.  The court will, after review of that summary, determine whether the circumstances support an expanded review of earlier-filed claims.

**SO ORDERED**.

**END OF DOCUMENT**
